144 So. 11

## FROHLICH v. SUPREME LODGE, K. P.
### I Div. 724.

Supreme Court of Alabama.
Oct. 6, 1932.

Rehearing Denied Nov. 10, 1932.

M. E. Frohlich and Harry T. Smith & Caffey, all of Mobile, for appellant.

Gordon Edington & Leigh, of Mobile, for appellee.

BOULDIN, J.

Action on the common counts for money had and received.

The cause was tried upon an agreed statement of facts, resulting in a judgment denying recovery except as to small undisputed items. Plaintiff appeals.

In 1911 Ignatius Frohlich, being accepted as a member of the insurance department of the Supreme Lodge, Knights of Pythias, was issued a benefit certificate for $3,000. He paid the monthly premium regularly until June, 1918, when he ceased to pay premiums, and never paid any thereafter. But Mr. B. J. Schuster, section secretary of the local lodge, advanced the money and sent in reg-

ularly to the insurance department the monthly premiums on said policy until January, 1919. at which time Mr. Schuster notified M. E. Frohlich, this plaintiff, son of the policyholder, that his father was six months in arrears on his premiums upon his policy in the Knights of Pythias, and asked plaintiff if he would pay the amount due. Plaintiff replied that he would, and did pay same to Mr. Schuster. Thereafter, plaintiff continued to meet the monthly payments for many years, viz., to January, 1930.

No further payment was made until March 24, 1930, when a remittance was made to cover two months' premiums. By the terms of the policy and rules of the order, made part of the contract, the policy had then lapsed and could be reinstated only on certificate of good health, which was not, and it seems by reason of his father's ill health could not be, furnished. The remittance of March 24th was held subject to the order of plaintiff.

The action is to recover all the moneys paid in by plaintiff to keep the policy in force. Judgment went only for the sum remitted March 24th, and a further sum of April 1, 1930.

The theory of the suit is that the policy in fact lapsed in 1918, and was never thereafter in force; that the moneys paid by plaintiff to keep it in force were paid by mistake, or induced by misrepresentations of Mr. Schuster, and is, therefore, money of the plaintiff in the hands of defendant due to be refunded to plaintiff.

Granting that the policy had lapsed, ipso facto, by the failure of the policyholder to meet the premium payments in 1918, and that it was never thereafter in force, the right to recover in an action for money had and received, is not questioned.

The theory of lapse in 1918 is rested upon the following facts:

Mr. Schuster never informed the policyholder he was advancing the money to meet his premiums, neither did he advise plaintiff that he had done so; nor did the insurance department to which all remittances were made, know anything as to who was paying the money from time to time to keep the policy in force, but it was accepted and applied by defendant to premium payments and, so far as defendant was concerned, the policy regarded and treated as in force until the nonpayment of premiums of 1930. It appears Mr. Schuster was no longer section secretary, and for some time payments had been sent in by plaintiff direct to defendant.

Among the laws, rules, and regulations, made part of the contract of insurance, are these:

"The regular monthly payments and assessments of all members of the Insurance Department shall be due and payable to their respective Section Secretaries without notice in advance, on the first day of each and every month, and the failure to make such payment on or before the 20th day of each month, shall cause from and after such date a forfeiture of the certificate of membership and all right, title and interest such member or his beneficiaries, may have in and to the same, and membership shall thereby cease ipso facto. * * *

"No officer of a Section and no officer of the Insurance Department shall possess or have the power to waive any of the requirements or Laws of the Supreme Lodge, nor shall they by any course of dealing or conduct bind the Supreme Lodge or estop the Supreme Lodge from insisting upon the strict observance and enforcement of all laws. * * *

"The receipt and retention of payments and assessments from members by the Insurance Department shall not constitute a waiver of any law of the Supreme Lodge, or defense which might be relied on had such payments not been received and retained. No course of dealing between members and officers, whether persisted in for a long or short time, shall waive this provision, or the effect of same; all of said laws enacted by the Supreme Lodge, having been enacted by it in its representative and legislative capacity only, in which every member is a party, are intended to bind all members at all times."

The validity of such laws of fraternal benefit societies is recognized by statute. Code, § 8477.

The question here is one of construction. Appellant contends that S. .S. 519, supra, makes premiums payable to section secretaries, and failure of the policyholder to pay works a forfeiture ipso facto; that the section secretary cannot, as assisting friend, pay the amount himself; that this would be in effect a waiver by him of the forfeiture in violation of the rules; that there was no waiver by defendant corporation for want of knowledge of the act of the local secretary, etc.

We do not concur in such construction. The section secretaries are named as local officers authorized to receive payment, but nothing denies the right to make payment to the home office as was done often in the present case. It is the failure to "make payment" of the premium to the insurance department, or one authorized to collect for it, which works a forfeiture of the policy. So, as this court has declared, it is immaterial who pays the premium.

When paid to the home office within time and there accepted, the policy was kept in force. Sovereign Camp, W. O. W., v. Hoomes, 219 Ala. 560, 122 So. 686; Sovereign Camp, W. O. W., v. Graham, 214 Ala. 239, 107 So. 98.

But it is argued the policyholder did not know of these advances by Mr. Schuster, that for all appearing, he wished the policy to lapse, especially in view of an arrangement by which he was paying only a portion of the premium each month, the balance being charged against the face of the policy as a loan, thereby constantly reducing its value. There is no evidence of a surrender of the policy, nor any expression of a purpose to give it up nor let it lapse.

True, a gift cannot be made to a person without his consent. Appellant suggests that in the above-cited cases the beneficiary by suit on the policies accepted the gift in the form of payment by another.

We do not regard the matter of acceptance of a gift as here involved. We are concerned with the relations between this plaintiff and this defendant. If, as we hold to be true, plaintiff by these payments kept the policy in force, so that the beneficiary could have sued upon it in case the death of the insured had ensued while he was so keeping it in force, the funds so paid in belong to defendant, not to plaintiff.

Obviously there was no material misrepresentation by Mr. Schuster in telling plaintiff his father's payments were in arrears, without telling him that he (Schuster) had paid them for his father.

The payments were in arrears, but coming to Schuster if paid. There was no statement that the policy had lapsed, but, on the contrary, it was implied that if plaintiff paid the arrears and future premiums it would continue in force.

Nor is there any case here of imposing a debt, in the form of a loan, upon the policyholder without his consent. The loan feature, relieving him from paying full premiums in cash, merely made such unpaid portions a charge against the policy, to be deducted when it became a fixed liability. It went merely to the amount payable at death.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.